IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 13 |
| BOBBY J. LANIER, | * | Case No.: 1-06-bk-00326MDF |
|     Debtor | * | |
| | * | |
| AMERICREDIT FINANCIAL | * | |
| SERVICES, INC., | * | |
|     Objectant | * | |
| | * | |
|     v. | * | |
| | * | |
| BOBBY J. LANIER, | * | |
|     Respondent | * | |

**OPINION**

The issue is this case arises at the intersection of two provisions of 11 U.S.C. § 1325(a). Section 1325(a)(9*) provides that the procedures for bifurcating a claim into secured and unsecured portions under § 506(a) are not applicable to a claim secured by a vehicle purchased by the debtor within 910 days of filing bankruptcy. Under § 1325(a)(5)(C) a debtor may provide for a secured claim by surrendering the vehicle securing the claim to the creditor as an alternative either to obtaining the creditor's acceptance of the plan or to paying the allowed amount of the claim through the plan. Bobby J. Lanier ("Debtor") proposes to modify his confirmed chapter 13 plan by surrendering a vehicle that is collateral for a claim held by Americredit Financial Services, Inc. ("Americredit"). Americredit objects to the proposed modification on a number of grounds, all but one of which I addressed in *In re Price*, — B.R. —, 2007 WL 1087036 (Bankr. M.D. Pa. March 5, 2007). In *Price* I determined that the plain language of § 1325(a)(9*)

1

(commonly referred to as "the hanging paragraph")[1] precludes the bifurcation of the claim of a 910-creditor into secured and unsecured portions. Americredit, however, does present a question of law that was not raised in *Price*. Americredit asserts that it will be deprived of a property right without just compensation in violation of the Fifth Amendment of the United States Constitution if it is not permitted to assert its deficiency claim. For the reasons set forth below, Americredit's objection will be overruled.

**Factual and Procedural History**

On November 6, 2004, Debtor executed a Retail Installment Contract (the "Contract") to purchase and finance a 2002 Pontiac Grand Am. The Contract was assigned to Americredit on an undisclosed subsequent date. After Debtor filed his chapter 13 petition, he confirmed a plan that proposed to pay Americredit the monthly contractual amount of $397.18 outside the plan and the pre-petition arrearages through the plan.

On July 7, 2006, Americredit moved for relief from the automatic stay alleging that Debtor had failed to make any post-petition payments during the four months after filing for bankruptcy relief. Debtor did not oppose the motion, and an order was entered lifting the automatic stay on August 18, 2006. Thereafter, Americredit repossessed the vehicle and sold it.

---

[1]The hanging paragraph provides as follows:

> For purposes of [11 U.S.C. § 1325(a)(5)], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day (sic) preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor. . . .

11 U.S.C. § 1325(a)(9*).

2

Case 1:06-bk-00326-MDF    Doc 64    Filed 06/29/07    Entered 07/02/07 15:47:46    Desc
Main Document    Page 2 of 12

After crediting the sale proceeds and debiting the costs associated with the vehicle's repossession and liquidation, Americredit filed an amended proof of claim for the deficiency in an amount of $9,445.73.

On December 7, 2006, Debtor filed a motion to modify his plan proposing to surrender the Grand Am in full satisfaction of Americredit's claim. Americredit objected to the proposed modification arguing that it was entitled under state law to assert a deficiency claim for the balance due after the collateral was liquidated. The matter is ready for decision.[2]

### Discussion

In *Price* I held that the surrender of a vehicle to a secured creditor in full satisfaction of its claim bars the filing of a deficiency claim for the balance of the obligation after the collateral is liquidated. The vehicle securing the claim in *Price*, which was not covered by insurance, was demolished in a one-car accident. The debtor's plan proposed to surrender the vehicle in full satisfaction of the secured claim. The secured creditor in *Price*, Citifinancial Auto Corporation ("Citifinancial"), never took possession of the demolished vehicle. Instead it filed an unsecured claim for the full amount of the remaining balance on the loan. Unlike the situation in *Price*, here Americredit repossessed and sold the vehicle, and its claim represents the deficiency amount after liquidation of the collateral.

---

[2] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) & (L). This Opinion constitutes the findings of fact and conclusions of law required to be made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

3

The minor differences between the facts of the two cases provide no basis to deviate from my holding in *Price* regarding the interpretation of § 1325(a)(9*) unless I find that Americredit's constitutional rights will be impaired. There are many reported cases that address the issue of whether a debtor may surrender a vehicle in full satisfaction of a 910-claim, and a majority have held that a debtor may confirm a plan with this provision. Only a few cases, however, address the issue of whether a creditor secured by a 910-vehicle has a property right in a deficiency claim that is protected by the Fifth Amendment.

In *In re Durham*, — B.R. —, 2006 WL 4058354 (Bankr. D. Utah, December 4, 2006) Americredit objected to confirmation of a debtor's plan, which provided for the surrender of its collateral in full satisfaction of the claim. In overruling the objection, the bankruptcy court held that secured creditors possess "a property interest in the collateral subject to the restraints existing in law at the time the loan was created." *Id.* at *4. The debtor in *Durham* obtained the loan to purchase a vehicle after the effective date of BAPCPA. The Utah court reasoned, therefore, that Americredit's security interest in the debtor's vehicle was created subject to the terms of the hanging paragraph, which precluded the assertion of a deficiency claim after the vehicle was surrendered. However, the *Durham* court did not rule on whether § 1325(a)(9*) was applicable to vehicle loans entered into before BAPCPA was enacted. *Id.* at *5 n.31. In the instant case, Americredit's security interest was created prior to the effective date of BAPCPA. Therefore, while I agree with *Durham*'s conclusion, it is does not resolve the issue in this case.

In *In re Pinti*, 363 B.R. 369, 2007 WL 744031 (Bankr. S.D.N.Y. 2007), the bankruptcy court addressed the takings issue on facts virtually identical to the instant case, except that in the New York case the issue was raised prior to confirmation of the debtor's plan. In *Pinti,* the

4

debtor filed a chapter 13 plan that provided for retention of the vehicle. Ford Motor Credit ("Ford"), the 910-creditor, obtained relief from the automatic stay and repossessed its collateral. In the motion for relief, Ford alleged that the debtor was in arrears on the loan pre-petition and had failed to make any payments post-petition. After the stay was lifted, Ford repossessed the vehicle, sold it, and filed an amended proof of claim for the deficiency. The debtor moved to "expunge" Ford's claim alleging that it had been satisfied by the sale of the vehicle. *Id.* at *2. At the hearing on the motion to expunge, the court determined that the motion was not ripe for decision. Thereafter, the debtor filed an amended plan proposing to surrender the vehicle in full satisfaction of Ford's claim. Ford then filed an objection to confirmation of the amended plan alleging, among other things, that surrender of the vehicle in full satisfaction of the debt violated its right to due process and was an unlawful taking of property without just compensation. *Id.* at *15. The court in *Pinti* relied on the opinion issued by the bankruptcy court in *In re Quick*, 360 B.R. 722, 732 (Bankr. N.D. Okla. 2007), in which the Oklahoma bankruptcy court held that the Fifth Amendment addresses property rights, not contractual rights, and that a deficiency judgment is a contractual right. The *Pinti* court agreed finding that because the vehicle had been surrendered to Ford, the creditor held only a contractual right to a deficiency claim that could be impaired without running afoul of the Fifth Amendment.[3]

---

[3] The dichotomy of "property" rights and "contract" rights may not be as crystalline as the *Pinti* and *Quick* decisions suggest. Contractual rights have been considered to be a species of property and subject to the constitutional protections of the due process and takings clauses. See James Stevens Rogers, *The Impairment of Secured Creditors' Rights in Reorganization: A Study of the Relationship between the Fifth Amendment and the Bankruptcy Clause*, 96 Harv. L. Rev. 973, 989-90 (1983) (citing cases). In *Wright v. Union Central Life Ins.*, 304 U.S. 502 (1938), cited below, the Supreme Court uses the terms "property rights" and "contract" interchangeably. One commentator has suggested that the distinction between property and contract rights in bankruptcy jurisprudence is not justified and that because state laws treat contractual obligations

The parameters of the Fifth Amendment as described by the *Pinti* and *Quick* courts are not new. In 1935 the Supreme Court held that '[u]nder the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the States, it is not prohibited from impairing the obligation of contracts." *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935). Although it arose in a non-bankruptcy case, this principle was reinforced by the Supreme Court in another decision issued the same year. "Contracts may create rights of property, but when contracts deal with a subject matter which lies within the control of the Congress, they have a congenital infirmity. Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them." *Norman v. Baltimore & Ohio R.R. Co.*, 294 U.S. 240, 307-08 (1935).

In the instant case, however, there is more at issue than simply the distinction between contracts and property. There is also the issue of the retrospective application of § 1325(a)(9*) to a contract that was created prior to the enactment of BAPCPA. Although there are no reported decisions on whether the application of BAPCPA to loans created before enactment of the statute constitutes an unconstitutional taking, the more general issue of whether, in some circumstances, an amendment to the bankruptcy laws may be applied retrospectively is well settled.

---

as property, bankruptcy law should as well. Blake Rohrbacher, Note, *More Equal Than Others: Defending Property-Contract Parity in Bankruptcy*, 114 Yale L.J. 1099, 1119 (2005). Despite the criticism of the commentators, the Supreme Court makes a distinction between property and contract in some cases and ignores the distinction in others. Compare *Wright* to *United States v. Security Industrial Bank*, 459 U.S. 70 (1982) below. Although the cases are not uniform, courts often state as a truism that a secured creditor's interest in preselected property should be afforded special constitutional significance, but an unsecured creditor's general interest in a debtor's property should not. Rogers, *supra,* at 992-93.

In *Wright v. Union Central Life Ins.*, 304 U.S. 502 (1938), the Supreme Court held that a debtor could exercise his right to extend a state law redemption period authorized under federal bankruptcy law even though the amendment to the bankruptcy law granting this right was passed after a judgment in foreclosure was entered against the debtor's property. On *certiorari* to the Supreme Court, the creditor asserted that if Wright were permitted to extend the redemption period, this extension would constitute a taking of property without just compensation under the Fifth Amendment. The Supreme Court rejected this argument stating that:

> The mortgage contract was made subject to constitutional power in the Congress to legislate on the subject of bankruptcies. Impliedly, this was written into the contract between [the borrower and the lender]. 'Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. . . .' Any purchaser at a judicial sale must purchase subject to the possibility of the exercise of the bankruptcy power in a manner consonant with the Fifth Amendment.
>
> ***
>
> If the argument is that Congress has no power to alter property rights, because the regulation of rights in property is a matter reserved to the states, it is futile. Bankruptcy proceedings constantly modify and affect the property rights established by state law. A familiar instance is the invalidation of transfers working a preference, though valid under state law when made.

*Id.* 304 U.S. at 516 (citation omitted).

The *Wright* case returned to the Supreme Court in 1940 on the issue of whether the disputed property was to be redeemed at a reappraised value or at a value fixed by the court. *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 276 (1940) ("*Wright II*"). The Supreme Court's opinion does not address Fifth Amendment or other constitutional issues in *Wright II,* but the Court does observe in *dicta* that the bankruptcy law provides "[s]afeguards . . . to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property.

7

. . . There is no constitutional claim of the creditor to more than that." *Id.* at 278. In *In re Timbers of Inwood Forest Associates, Ltd.,* 793 F.2d 1380, 1391 (5th Cir. 1986), *aff'd* 484 U.S. 365 (1987), the Fifth Circuit proclaimed that this passage from *Wright II* is "the clearest statement of a fifth [sic] amendment right of a secured creditor, namely, to have the value of its secured position maintained throughout the [bankruptcy] proceeding. Thus an undersecured creditor is protected by the fifth [sic] amendment only to the extent of the *value* of his collateral rather than as to the *amount* of his total claim." *Timbers of Inwood,* 793 F.2d at 1390 n.14 (emphasis in the original)(citing 2 *Collier on Bankruptcy* ¶ 362.01, at 362-15 (15th ed. 1985)).

*Timbers* was affirmed by the Supreme Court notwithstanding conflicting *dicta* in the Court's prior decision in *United States v. Security Industrial Bank*, 459 U.S. 70 (1982). In *Security Industrial Bank*, the Supreme Court considered a challenge to retrospective application of § 522(f) of the Bankruptcy Reform Act of 1978, which authorizes debtors to avoid certain nonpossessory, nonpurchase money liens. The Circuit affirmed the holding that retrospective application of the lien avoidance provision violated the Fifth Amendment by effecting "a complete taking of the secured creditors' property interest." *United States v. Security National Bank*, 642 F.2d 1193, 1995 (10th Cir. 1981). In affirming the decision of the lower court, the Supreme Court recognized that historically the constitutional authority of the federal government to regulate bankruptcy "has been regularly construed to authorize the retrospective impairment of *contractual* obligations." *Security Industrial Bank*, 459 U.S. at 74, (emphasis added). But the Court observed that "the *contractual* right of a secured creditor to obtain repayment of his debt may be quite different in legal contemplation from the *property* right of the same creditor in the collateral." *Id*. 459 U.S. at 75 (emphasis added). The Court emphasized that avoidance of the

8

liens would "result in a complete destruction of the property right of the secured party. . . ." *Id.* "The total destruction by the government of all compensable value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment 'taking' and is not a mere 'consequential incidence' of a valid regulatory measure." *Id.* 459 U.S. at 77, 103 S.Ct. at 412 (citing *Armstrong v. United States*, 364 U.S. 40, 48, 80 S.Ct. 1563, 1568-69 (1961)). Therefore, while the Court did not explicitly hold that the avoidance of the lien would effect an unconstitutional taking, it determined that principles of statutory construction dictated that the provision should operate prospectively to avoid the constitutional question. *Security Industrial Bank*, 459 U.S. at 79-80.

The impact of § 1325(a)(9*) on a secured creditor's rights when a vehicle is surrendered is significantly different from the impact of § 522(f). Liens affected by the hanging paragraph are not destroyed, rather they are protected to the extent of the value of the collateral. In fact, the result produced when a 910-vehicle is surrendered in full satisfaction of lien is the polar opposite of the avoidance of a lien under § 522(f). If a lien impairs a debtor's exemption claim, § 522(f) permits a debtor to destroy a lien on certain property, relegating the claim to unsecured status. In contrast, § 1325(a)(9*) prohibits the bifurcation of a lien on a 910-vehicle, thus protecting the lien, but also barring the assertion of an unsecured claim. Under the *Wright* cases, preservation of the creditor's lien to the extent of the value of the collateral is all that is required to survive Fifth Amendment scrutiny. Thus, I conclude that the Fifth Amendment is not violated when a creditor with a lien created prior to the effective date of BAPCPA is precluded from asserting a deficiency claim against a debtor's estate.

9

Case 1:06-bk-00326-MDF    Doc 64    Filed 06/29/07    Entered 07/02/07 15:47:46    Desc
Main Document    Page 9 of 12

Not only is there no constitutional bar to applying § 1325(a)(9*) retrospectively, there is no reason to assume that Congress intended the provision to be applied only prospectively. Section 1501 of BAPCPA[4] specifically provides that except where a different date is specified, the amendments apply to *cases* commenced after the effective date of the Act, which was October 17, 2005. Secured lenders, including Americredit, have not hesitated to invoke the hanging paragraph to their own advantage to preclude a debtor from bifurcating claims secured by vehicles purchased before October 17, 2005. It would be absurd to hold that the hanging paragraph could be applied retrospectively to situations in which a debtor seeks to bifurcate a 910-claim and not to situations in which a debtor seeks to surrender a vehicle.[5]

Therefore, based upon my earlier holding in *Price* and the review of Americredit's constitutional claims as discussed above, I find that the objection to Debtor's motion to modify

---

[4]Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, §1501, Pub. L. No. 109-8, 119 Stat. 37.

[5]One commentator has suggested that retroactivity issues are resolved by answering two questions – does the legislation disrupt economic expectations and are those expectations legitimate? Rogers, *supra*, note 3, at 1024-28. Based upon this analysis, at the time Americredit extended the loan it could have expected that if Debtor filed a chapter 13 petition, its loan would be crammed down to the value of the collateral if the collateral was worth significantly less than the amount of the debt. Therefore, in most 910-cases its expectations are exceeded. In this case, Americredit would have expected that its lien would be protected to the extent of the value of the collateral. Admittedly, Americredit also could have expected that if it obtained relief from the stay, it would have been entitled to file a proof of claim for the deficiency after it liquidated its collateral. But whether Americredit has a *legitimate* expectation that its state law contract rights would remained undisturbed in bankruptcy is the second part of the test. Considering that the courts have upheld numerous amendments to the bankruptcy laws over the years suggests that a creditor would have a heavy burden to prove that it expected that the bankruptcy laws would remain unchanged over the course of a loan.

his confirmed plan must be overruled and the motion to modify granted.[6] An appropriate order will be entered.

By the Court,

*/s/ Mary D. France*
Bankruptcy Judge

Date: June 29, 2007

*This document is electronically signed and filed on the same date.*

---

[6]Americredit did not object to the modification of Debtor's plan based upon lack of good faith. However, § 1325(a)(3) requires that a plan be proposed in good faith, and § 1329(b)(1) incorporates the provisions of §1325(a). A finding that a debtor "has unfairly manipulated the Bankruptcy Code" is one of the grounds for a finding of bad faith in the filing of a plan." *Educational Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987) *cited in In re Norwood,* 178 B.R. 683, 688 (Bankr. E.D. Pa. 1995). Given that Debtor sought to amend his plan only after the vehicle had already been repossessed, Americredit may have been justified in questioning the good faith of Debtor's motion to modify. Bankruptcy Rule 3020(b)(2) provides that "if no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." As a logical corollary, if objections are timely filed, the court need only consider evidence relevant to the grounds asserted in the objections. *In re Castello,* 127 B.R. 257, 258 (Bankr. D. Or. 1991). Because good faith was not one of the grounds asserted in Americredit's objection and the record is devoid of evidence regarding the circumstances surrounding Debtor's default on the loan agreement, I am unable to find that the modification to Debtor's confirmed plan was not filed in good faith.

11

12